UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRETT SULLIVAN,<br><br>              Plaintiff,<br><br>   v.<br><br>QUALITY LOAN SERVICE CORPORATION,<br><br>              Defendants. | Case No. 1:10-CV-436-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are (1) Plaintiff Brett Sullivan's motions for a temporary restraining order and injunction (Dkts. 3&4) and (2) Plaintiff JPMorgan Chase & Co.'s Motion to Intervene (Dkt. 8).

On August 27, 2010, Sullivan, proceeding pro se, filed a Complaint, alleging that he "entered into a consumer contract for the refinance of a primary residence located at 107 Arapahoe Lane Hailey ID 83333." *Compl.* at 1, Dkt. 3. In the Complaint, Sullivan identifies six causes of action: (1) breach of fiduciary duty; (2) negligence/negligence per

se; (3) agent: common law fraud; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of the Truth In Lending Act (TILA)(15 U.S.C. § 1601 et seq.); and (6) intentional infliction of emotional distress.  He also alludes to possible claims for civil conspiracy, unjust enrichment, quiet title, and violations of § 2607 of the Real Estate Settlement Procedures Act (RESPA) and the Home Ownership Equity Protection Act (HOEPA).  None of these claims, however, fall under the "Cause of Action" heading in his Complaint.   JPMorgan Chase & Co. has moved to intervene as a defendant.

The Court finds the matter appropriate for decision without oral argument. See Fed.R.Civ.P. 78; L.R. 7-15.  For the reasons set forth below, the Court will grant Chase's motion to intervene but dismiss Sullivan's Complaint and deny his request for an injunction.

## BACKGROUND

**1.     Plaintiffs' Allegations**

As noted above, Sullivan  alleges in his Complaint that he "entered into a consumer contract for the refinance of a primary residence located at 107 Arapahoe Lane Hailey ID 83333." *Compl.* at 1, Dkt. 3.  Sullivan does not specify whether he refinanced the loan on the property with Defendant Quality Loan Service Corp.  Nor does Sullivan indicate when or where this transaction occurred.  And he does not provide any underlying documentation.

Under the heading, "Statement of Cause," Sullivan further alleges:

- Defendants[1], acting in concert and collusion with others, induced Sullivan to enter into a predatory loan agreement with Defendant.

- Defendants committed numerous acts of fraud against Sullivan in furtherance of a carefully crafted scheme intended to defraud him.

- Defendants failed to make proper notices to Petitioner that would have given warning of the types of tactics used by Defendants to defraud Sullivan.

- Defendants charged false fees to Sullivan at settlement.

*Id.* at 1-2.

To remedy the wrongs allegedly committed against him, Sullivan asks for (1) an emergency restraining order enjoining "lender and any successor in interest" from foreclosing on his property; (2) a permanent injunction "enjoining Defendants from engaging in the fraudulent, deceptive, predatory and negligent acts and practices alleged" in the Complaint; (3) quiet title to the property; (4) rescission of the loan contract and restitution by "Defendants"; (5) "disgorgement of all amounts wrongfully acquired by Defendants according to proof at trial"; (6) actual damages in the amount $645,000.00; (7) "pain and suffering due to extreme mental anguish in an amount to be determined at trial"; (8) "pre-judgment and post-judgment interest according to proof at trial"; (9) "punitive damages according to proof at trial in an amount equal to $1,935,000"; and (10) attorneys' fees and costs. *Id.* at 21-22.

    **2.**    **JPMorgan Chase & Co.**

---

[1] Sullivan refers to "Defendants" but other Defendant is identified except for Quality Loan Service Corporation.

JPMorgan Chase & Co. has moved to intervene as a defendant and has filed an opposition to Sullivan's request for a restraining order and injunction. While Sullivan speaks in generalities of the wrongs committed by various players in the real estate industry, Chase provides a background of the specific loan transaction at issue here.

According to Chase, in 2007, Sullivan, with the assistance of Liberty Financial Group, Inc. as his mortgage broker, obtained a loan from Washington Mutual Bank, FA to refinance his Hailey property. *Lowry Aff.* ¶ 5, Dkt. 8-2. In connection with the refinance, on October 29, 2007, Sullivan received a loan from Washington Mutual and executed a promissory note in favor of Washington Mutual for the principal amount of $2,010,000 with interest accruing at a variable interest rate. *Id.*, Ex. A, Dkt. 8-3. Pursuant to the promissory note, Sullivan agreed to make monthly interest payments beginning January 1, 2008.

Also in connection with the refinancing, Washington Mutual and Sullivan each agreed to pay certain broker fees to Liberty Financial. Washington Mutual sent Sullivan a Disclosure Letter dated October 19, 2007, advising him that Liberty Financial would be charging him broker fees, which were detailed in an enclosed Good Faith Estimate. *Id.*, Ex. B, Dkt. 8-4. Washington Mutual further advised Sullivan that it had no part in calculating the broker fees and would not receive any of the fees.

At the same time Sullivan executed the promissory note, he executed a deed of trust on the Hailey property in favor of Washington Mutual to secure the obligations owed under the note. *Id.*, Ex. C, Dkt. 8-5. The Deed of Trust, which named Sun Valley

Title as the Trustee was recorded as Instrument No. 552941, in the official records of Blaine County, Idaho. *Id.*

In September 2008, Chase purchased Washington Mutual's assets from the Federal Deposit Insurance Corporation receivership. The assets purchased included Sullivan's Note and Deed of Trust. Sullivan failed to make his regularly scheduled loan payment on February 1, 2009, and he has not made any payments since January 31, 2009. *Id.* at ¶ 9.

On March 31, 2009, Chase sent a Notice of Collection Activity, informing Sullivan that he had failed to make monthly payments pursuant to the Note. Sullivan was also informed that "WaMu is becoming Chase." *Id.*, Ex. D, Dkt. 8-6.

On May 26, 2009, Chase appointed Pioneer Lender Trustee Services, LLC as successor trustee under the Deed of Trust and listed Pioneer Lender's address as Quality Loan Service Corp. of Washington. *Id.*, Ex. E., Dkt. 8-7.

In June 2009, Pioneer Lender, as the appointed successor trustee under the Deed of Trust, executed a Notice of Default and Election to Sell Under Deed of Trust. *Id.*, Ex. F, Dkt. 8-8.

Nearly a year later, on April 30, 2010, a copy of a Notice of Trustee's Sale was sent to Sullivan, which provided that "Pioneer Title Company of Ada County dba Pioneer Lender Trustee Services, as Trustee, as Trustee on behalf of Chase Bank, National Association" would sell the Property at public auction at 10:00 AM on August 30, 2010. *Id.* On or about May 8, 2010, a copy of the Notice of Trustee's Sale was posted on the front door of the residence at 107 Arapahoe Lane, Hailey, ID 83333. *Id.* Beginning on

May 12, 2010, and continuing for four consecutive weeks, the Notice of Trustee's Sale was published in the Idaho Mountain Express, a weekly newspaper published in Ketchum, Blaine County, Idaho. *Id.*, Ex. H, Dkt. 8-8.

Chase alleges that Sullivan "took a series of steps aimed at attempting to avoid his obligations under the Note" after receiving notice of the non-judicial foreclosure sale. *Chase Opp'n* at 4, Dkt. 9. These allegedly "improper actions" included: (1) executing and recording a document titled "Constructive Legal Notice of Lawful Debt Validation Demand" addressed to Washington Mutual and Chase Finance; (2) mailing to Washington Mutual and Chase Home Finance a "Qualified Written Request" demanding 40 categories of documents and answers to 142 questions (to which Chase responded); (3) executing and recording a document titled "Notice of Revocation of Power of Attorney," whereby Sullivan purported to revoke his assignment of all Powers of Attorney pertaining to the Note and Deed of Trust; (4) executing and recording a "Notice of Default," which purported to give notice that Washington Mutual Washington Mutual and Chase Home Finance were in default for their alleged failure to provide full disclosure to Sullivan and that such default was cause for cancelling "the entire alleged loan mortgage/deed of trust process"; and (5) executing and recording a document titled "Notice of Removal," by which Sullivan purported to remove all Trustees and Successor Trustees and revoke the Power of Attorney granted to Washington Mutual and Chase Home Finance. *Id.*, Exs. I-M, Dkts. 8-9 through 8-15.

In addition, on February 18, 2010, Sullivan executed a "Deed of Trust" from Big

Basin LLC.  With this document, Sullivan, as manager of Big Basin, LLC, purported to grant a security interest in the Hailey property in favor of Grand Prize Family Limited Partnership and appoint Cassius Sullivan as Trustee.

A month later, on March 23, 2010, non-party Russell Gardner, who identified himself as the authorized agent of North American Trust Title, LLC, executed a document titled "Deed of Reconveyance and Release of Lien," which stated (1) that North American Trust Title, LLC, was "newly Substituted as Trustee on February 18, 2010," and was the present substituted trustee under the Deed of Trust executed by Plaintiff in favor of Washington Mutual; (2) that the indebtedness secured by the Deed of Trust had been fully satisfied; and (3) that Plaintiff had instructed Mr. Gardner to fully release and reconvey "to the parties legally thereto all rights, title and interest which hereby releases the security under said Deeds of Trust."  The document was recorded on March 29, 2010. *Id.*, Ex. P, Dkt. 8-18.

Two days later, on March 25, 2010, Sullivan executed and recorded a Quitclaim Deed seeking to gift the property to Big Basin LLC.  *Id.*, Ex. Q, Dkt. 8-19.  It also appointed Big Basin as the Trustee and Beneficiary of the Deed of Trust.  *Id.*

And, finally, on August 27, 2010, three days before the scheduled Trustee's Sale, Sullivan filed this action, naming Quality Loan as the only defendant.  According to Chase, Sullivan phoned Quality Loan the morning of the sale and represented a temporary restraining order was in place preventing the sale.  Based on Sullivan's representations, the Trustee's Sale was postponed until October 10, 2010.  *Id.* ¶ 24.  It is the Court's

understanding that Chase continues to postpone the sale.

## ANALYSIS

**1.     Motion to Intervene**

    **A.     *Legal Standard***

The Federal Rules of Civil Procedure set forth two types of intervention: 1) as a matter of right and 2) permissive intervention. See Fed.R.Civ.P. 24(a)(2), 24(b).

To intervene as of right under Rule 24(a)(2), the proposed intervenor must demonstrate that "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met. *Id*.; *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("failure to satisfy any one of the requirements is fatal to the application"). In determining whether intervention is appropriate, courts are guided primarily by practical and equitable concerns, and the requirements for intervention are broadly interpreted in favor of intervention. *City of Los Angeles*, 288 F.3d at 397.

A proposed intervenor who seeks permissive intervention pursuant to Rule 24(b)(2) must prove that it meets three threshold requirements: (1) it shares a common

question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims.  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998).  The court must also consider whether "intervention will unduly delay the main action or will unfairly prejudice the existing parties."  *Id.*; *see* Fed.R.Civ.P. 24(b)(3).

    **B.**    *Intervention as a Matter of Right*

Chase argues that it should be allowed to intervene as a matter of right.  The Court agrees.

First, as the successor in interest to the Deed of Trust and the party that has directed that the property be sold at a non-judicial foreclosure sale, Chase has a significant protectable interest in the property, which is protected by law and related to Sullivan's claim.  *City of Los Angeles*, 288 F.3d at 398.

Second, the disposition of this action may impair Chase's ability to protect its interests.  "The question must be put into practical terms rather than legal terms, and the rule is satisfied whenever disposition of the action would put the applicant at a practical disadvantage in protecting its interest."  *Portfolio FB-Idaho, LLC v. Federal Deposit Ins. Corp. as Receiver for First Bank of Idaho,* Case No. 1:10-CV-377-BLW, 2010 WL 5391442, *2  (D.Idaho December 17, 2010).  Undoubtedly, if the Court were to enjoin the sale of the property, Chase's interest would be impaired as it holds the Deed of Trust.

Third, Chase's application is timely.  To determine whether a motion is timely, the court considers (1) the stage of the proceedings at which intervention is sought; (2)

prejudice to the other parties, and (3) the reason for and length of any delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Here, Chase promptly filed its motion to intervene early in the proceedings. Therefore, there is no prejudice. Nor was there any delay in filing that must be explained.

Finally, the existing parties may not adequately represent Chase's interest. The Court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cateyano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests "may be" inadequate. *Id.* The only defendant named in this action, Quality Loan, is merely an agent of Pioneer Lender, which is the trustee of Chase and acts on Chase's behalf with regard to the non-judicial foreclosure sale of the Property. Quality Loan has no interest in the Property; therefore, Quality Loan has little incentive to represent Chase's interests in this action.

In the light of the Ninth Circuit's policy of liberal intervention and the minimal showing Chase must make, as well as the equitable principles behind permitting a party with a significant, practical interest in the case to intervene, the Court will grant Chase's Motion to Intervene as of Right as a Defendant.

3.  **Initial Review of the Complaint**

The Complaint fails to allege cognizable claims.

The Court previously granted leave to Sullivan to proceed informa pauperis. *Order*, Dkt. 7. Any complaint filed by a person proceeding informa pauperis is subject to sua sponte dismissal to the extent it contains claims that are "frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

Even though Sullivan's application to proceed informa pauperis was previously granted, it is entirely proper for the Court to dismiss the action at any time it is satisfied Sullivan's claims are frivolous or malicious. *Carman v. Burgess*, 763 F.Supp. 419 (W.D.Mo. 1991); *c.f.*, *Stiltner v. Rhay*, 322 F.2d 314 (9th Cir. 1963) (preferable procedure is to grant leave to proceed in forma pauperis and then consider whether to dismiss the action because it is frivolous or malicious). Indeed, "section 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain factual allegations

sufficient to rise above the "speculative level," *Twombly*, 550 U.S. at 555, or the merely possible or conceivable. *Id.* at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Here, the requisite factual showing required to state a claim is entirely absent. Sullivan makes sweeping allegations regarding a "carefully crafted criminal connivance" committed by various entities within the "real estate industry." But Sullivan never specifies what role the only named defendant, Quality Loan, played. Indeed, Sullivan never identifies, names, refers to, or addresses Quality Loan once in the body of the Complaint. Is Quality Loan the Lender, the Trustee, the Appraiser, the "Agent"? It is impossible to tell from Sullivan's allegations, which impugn the entire real estate industry in general but which are utterly devoid of facts pertaining specifically to Quality Loan or the pending foreclosure of Sullivan's Hailey property.

Although the Court must construe a pro se plaintiff's complaint liberally, Sullivan nonetheless must satisfy Rule 8(d)(1) of the Federal Rules of Civil Procedure, which requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

*McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints ... impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir.1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. Sullivan cannot make generic allegations against "Defendants" and expect to notify Quality Loan of the wrongs with which it is charged. Sullivan's Complaint must therefore be dismissed.

### 2. Motion for Temporary Restraining Order and Injunction

Sullivan seek a temporary restraining order and injunction to prevent the non-judicial foreclosure sale of the Hailey property.

### A. *Legal Standard*

F.R.Civ.P. 65(b)(1)(A) permits a preliminary "only if" "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008). To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest. *Winter*, 129 U.S. at 374. In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542 (1987)).

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).

### B. *Sullivan's Right to an Injunction*

#### (1) *Likelihood of Success on Merits*

Pursuant to *Winter*, Sullivan must make a "clear showing" that he is "likely to succeed on the merits." *Winter*, 129 S.Ct. at 375-376. With dismissal of his claims, Sullivan is unable to show success on the merits.

(2) *Irreparable Harm*

Sullivan argues that foreclosure of the property would cause him irreparable harm because he would lose his property. Loss of his property alone, however, does not justify the granting of injunctive relief absent a showing by Sullivan that he is likely to succeed on the merits. *See, e.g., Avila v. Countrywide Home Loans*, No. 10-CV-05485-LHK, 2010 WL 5071714, *7 (N.D.Cal. Dec. 7, 2010) ("When the chance of success is very low, courts have refused to grant preliminary injunctive relief to halt a home foreclosure.") And Sullivan fails to demonstrate that he is entitled to remain on the property. Under these circumstances, loss of the property is not irreparable injury.

In addition, the Court observes that Sullivan knew about the potential for foreclosure as early as June of 2009. Sullivan, however, waited more than a year – August 27, 2010 – to file this suit challenging the sale. Sullivan does not explain this delay and has therefore failed to demonstrate the absence of fault in creating the crisis that supposedly warrants injunctive relief.

(3) *Balance of Equities*

Sullivan fails to demonstrate that the balance of equities merits his requested injunctive relief. In fact, the balance equities weighs in favor of Quality Loan as the record suggests that Sullivan remains on the property improperly without payment of outstanding amounts owed.

(4) *Public Interest*

"In exercising their sound discretion, courts of equity should pay particular regard

for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. at 376-77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, (1982)). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009).

Sullivan points to no public interest to support his requested injunction. Granting an injunction would be something of a disservice to the public interest by allowing Sullivan to remain on the property without payment of the outstanding debt owed.

## ORDER

IT IS ORDERED that:

1. The Motion to Intervene (Dkt. 8) is GRANTED.

2. Plaintiff Brett Sullivan's motions for a temporary restraining order and injunction (Dkts. 3&4) are DENIED.

3. Plaintiff Brett Sullivan's Complaint is DISMISSED WITHOUT PREJUDICE.

DATED: **January 11, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge